All right, our next case for this morning is Oliver v. Joint Logistics Managers. Mr. Fehwiger. Thank you, Your Honor, and may it please the Court, Counsel. We're hearing an 2017, granting the defendant's motion for summary judgment on a race discrimination and retaliation claim under Section 1981. In the case of Carter v. Chicago State University, this Court recognized that under 1981, this gives African Americans the right to make the terms of the contract. In this case, we believe Judge Darrell erred in the interpretation of the collective bargaining agreement, and in particular, Article 7.3a, when read in he possessed in importance, a class A CDL license. He had that, but I guess what I understood from the collective bargaining agreement, is that there really are two separate units, the repair unit, basically. And the operations are a separate unit,Let me apologize. Is it That's correct. And that seniority ran separately for each one. So when you move from one unit to another, which is not impossible, but you don't carry your seniority with you. Into the new unit. Into the new unit. Yes. And so at the time Mr. Oliver is competing with Mr. Vance for this mechanic's position, they both have a zero level of seniority, because it's outside unit. Okay. So the company looks at other factors, such as the resume and the past experience. I understand that. But I was addressing the argument regarding the layoff on the truck driver at this point, but I'll be happy to go in. Yeah, I mean, So the layoff, though, is just, it's a seniority based system. Well, it's not a qualifications based system. Look at the express language of 7.3a, and it states, when the company determines that there will be a reduction in the number of employees in any seniority unit, a reduced section 7.1a, which is the seniority section, and 7.1b, which is the qualification section of this article, may exercise his or her unit seniority to displace the least senior employee or equal or lower rate. And so what the judge in this case has done is has eliminated the qualifications. Mr. Oliver had the qualification, namely the CDLA driver's license, plus hazmat certification. But your opponents argue that it works differently, if I understand them. You can tell me why this is wrong if you want. But I think they suggest that layoffs happen on a strict seniority basis. Then you have a group of people who are the post-layoff survivors, so to speak, and the B qualifications may come into account at that point, but they don't ever trump seniority in terms of who gets laid off. Well, then that means that we're ignoring section B completely, because under section 7.3, it says you're to consider the factors of 7.1a and 7.1b. So the court's statement here is let's just adopt a seniority position. But when you read a contract, it's fundamental that you give meaning to all of its phrases and all of its terms. The reading that the union wants to give here gives no meaning to the phrase qualifications in the situation of a layoff. Mr. Oliver... So you read this collective bargaining agreement, then, to allow the company, if it wants to, when it needs to have a layoff, to make it exclusively a merit-based layoff. To lay off the first persons who are not as I have provided the court with three comparators who are Caucasian. One didn't have a class A CDL, two didn't have HAZMAT endorsement or certification on their licenses. That means that they aren't qualified. Scott Schneider admitted that position descriptions for both truck driving positions required both, namely a CDL with a class A and also a HAZMAT certification. Mr. Oliver is the only one out of those four candidates, so to speak, for layoff who possessed that. He is more giving meaning to both terms under 7.1A and 7.1B. We believe that we've created the issue of material fact that prevents summary judgment on this issue. As to... I understand the court recognizes under the discrimination case with Rocky Vance versus Anthony for the mechanics position that that constituted a decision of the employer that Vance was more qualified than Mr. Oliver. We believe we raised the material issue of fact by having the testimony of both Mr. Oliver and Mr. Spoon, the union president, who reviewed the resumes and told management that Mr. Oliver was more qualified. But we have a very forgiving standard of review. I'm thinking of cases such as Millbrook about an employer's assessment of qualifications, and there's no doubt that Mr. Vance had lots more mechanic-like positions on his resume. They checked his references, and Mr. Oliver didn't have any, except his own statement like, I'm a great mechanic. But that's not the kind of concrete information an employer has to rely on. I'm running out of my time, so I'll... You are free to save a little for rebuttal. Okay. Ms. Killins? May it please the court, my name is Kearney Killins, and I represent Joint Logistics Managers, Inc. Joint Logistics is a minority, women, service-disabled, veteran-owned company. It's a logistics company. They received the contract to handle the logistics at the Rock Island Arsenal, and they did so from 2012 to 2015. When they came... So Ms. Killins, could you start with... I mean, it's the district court certainly understands this. I think it's at page 7 of her opinion or so. The district court, wherever she says it, clearly says that this is a seniority-based work environment, and that only seniority... Oh, sorry, it's page 11. JMLI's adherence to a bona fide seniority system disallows Oliver from claiming that people at seniority were similarly situated, and so on and so on. So, how is it an exclusive seniority system when the Section 7.1b factors are mentioned? The 7.1b factors regarding qualifications come into play when somebody is challenging a layoff decision for somebody who has less seniority. Specifically, it says, the 7.3 talks about after somebody is selected for layoff, that person... So that's the reduced employee. That's the reduced employee, right, may exercise his or her seniority to displace either a least senior or an equal to. And when you're looking at equal to, that's when the qualifications come into play. And the qualifications could come into play if you have two people with equal seniority in the bargaining unit when a layoff decision is made. But the statements that were clear in the record, the union president, the company, and even Mr. Oliver agreed that he was the appropriate person to be laid off when there was a layoff in the trucking unit because he was the least senior employee. Even though he had better qualifications. That argument came up from his attorney for the first time. The way this collective bargaining agreement operated, it operated on a seniority based system. That is what Mr. Spoon said. I asked him in his deposition, have you ever made the argument based on this contract that somebody had a license or a better qualification and therefore should be retained instead of somebody with more seniority? And he said, no. I said, why not? He said, because it's a seniority based system. The other part of this that really is a red herring is that all of these people were employed by the prior logistics company and they were employed by joint logistics when they came in. There has never been a statement that any of these people were not qualified to do their job on the Rock Island Arsenal because they didn't have either this Hazmat or Class A certification. That is something that joint logistics wanted to have in the future for hires, but it did not make any of the current employees unqualified to do their job. And can you imagine if they had terminated a senior person in the bargaining unit saying you didn't have the Hazmat certification and he said, I've never had to use the Hazmat certification. We don't transfer dangerous chemicals or whatever is protected by Hazmat. That would draw a grievance. But when I asked Mr. Oliver, did you grieve the fact that you were laid off as the lowest person in our brief and which have not been contradicted by plaintiff at all, both say that when you have a bona fide seniority system, the way this union contract does, employees are not similarly situated if they don't have the right, if based on their seniority, if they don't have the same seniority. So it doesn't matter what their qualifications are. You are looking at seniority first. But that's not actually spelled out in so many words in this contract. This must be the history of the collective bargaining agreement. In terms of it being... That the B characteristics come into play only when there's a tie on seniority. It doesn't say when there is a tie. I think it suggests it when they're talking about when in 7.3A that the person who is being displaced can try to bump somebody else looking at qualifications as determined by the company through position descriptions and other items. And that is and other items. What plaintiff is suggesting here is that we should just look at the job description to say whether somebody's qualified or not. And in this case, as I said, there's no evidence that either the HAZMAT certificate or the Class A certification was required to do this job, to actually perform the job. And then turning to the decision between Mr. Vance and Mr. Oliver for the position in the repair unit. As the court noted, it is up to the employer to make a decision. The reasons, they're usually subjective, but they have to be rational. And we presented, Mr. Schneider identified rational reasons why he believed Mr. Oliver was not as qualified, if qualified at all, for the position that was given to Mr. Vance. Now, it does appear with 20-20 hindsight that maybe you made the wrong call. Well, Mr. Vance turned out to be not a great employee. That is true. But that doesn't mean that Mr. Oliver would have been a good employee. Again, we're back at the circumstance. We have Mr. Oliver saying, I can do that. And really the argument that plaintiff is saying with the qualification of five years experience, he wants it to be able to go out and verify it. They need to. I could stand here and say, I can repair a motor vehicle because I have experience working on my car in the driveway, but that doesn't mean I am qualified to do the job at the Rock Island Arsenal. It was incumbent on Mr. Oliver to show his qualifications. And once he learned Mr. Vance got the position, he's also complaining that it was wrong for them. And he never came to JLMI and said, you were mistaken when you determined I didn't have the qualifications or the necessary experience. He never did anything to disabuse them of that notion. So there can't be retaliation if he did not apply for and was rejected. And he hasn't been able to show he had the qualifications either. So in summary, there are no facts and plaintiff has cited no case law to contract either the Gannett or the Nunnery cases to suggest that either this bona fide seniority system was not followed or that, especially that it was not followed because of discrimination, or that there was retaliation. And we ask the court to uphold Judge Darrow's decision in favor of joint logistics. All right. Thank you very much. Thank you. Anything further? 7.3A says a reduced employee selected on the basis of the factors outlined in Section 7.1A and B, not we have this bona fide seniority system, which is A. Do you have any records? Is there anything in this record about previous layoffs? In this workplace, have layoffs ever proceeded on any basis other than pure seniority? I don't believe there's anything in the record to that effect, Your Honor. Okay. That's fine. But, again, this is contract interpretation. But I was looking at, like, sometimes if a contract is ambiguous, you can see how the parties have actually carried it out. Yes, but I'm not saying that this is ambiguous in this situation because the person for management, Scott Schneider, admitted that in order to be in this position, you had to have the qualifications. And three of these individuals didn't. Let's assume, for example, that there's a group of union emergency room physicians and that they were subject to the same type of language as in this case. And a layoff was coming, and they laid off the least senior African American emergency room physician who had credentials to the sky and was board certified. And they required an Illinois license and board certification. And you had some older white doctors who didn't keep up on their continuing education and didn't have board certification and didn't have even a valid Illinois license. You're combining both clauses, not just the bona fide seniority system. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.